By the Cotjkt.
Beyholds, J.
The plaintiff in this action was married to Hugh Miller, about the year 1839. As she claims, he, shortly after that, deserted her, and since about a year subsequent to the marriage, she had neither seen him, nor heard of his being alive up to the time of the trial of this action, which occurred in January, 1873.
Upon the trial, however, Miller appeared, and was-sworn as a witness for the defendant. Leaving out of view the plaintiff’s marriage with Bell, in 1850, it appears from her testimony that she was married to John Spicer, in June, 1853. He died in 1868.
In 1863, John Spicer, by deeds, in which the plaintiff as his wife joined, conveyed to the defendant certain real estate in the city of New York, and the plaintiff alleges that in consideration of such transfer, the defendant promised to pay to her in the event of the death of said John Spicer, “ an amount equal to her dower, interest, and right of dower,” in the property.
Upon this alleged promise the action was brought, and for the value of such dower-right, as estimated by the jury, the verdict in favor of the plaintiff, was rendered.
The first question which arises, is whether the plaintiff would have been entitled to dower, in lands of which John Spicer might have died seized.
Upon a careful examination of the statute, I have cometo a conclusion, adverse to the plaintiff, upon this point. By section 5, of article 1, title 1, 'ch. 8, part 3 of the revised statutes (3 Rev. 8tat., 139), it is enacted that no second1 or other subsequent marriage shall be contracted by any person during the lifetime of any former husband or wife of such person, unless the former mar *122 riage shall have been annulled or dissolved from, some cause other than the adultery of such person, or unless such former husband or wife shall have been finally sentenced to imprisonment for life ; and that every marriage contracted in violation of such provisions, shall be absolutely void, except in the case provided for in the next section.
That section is as follows : “ Sec. 6. If any person whose husband or wife shall have absented himself or herself for the space of five successive years, without being known to such person to be living, during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority.”
Article 2, of the same title, section 20, provides that the court “may by a sentence of nullity, declare void the marriage contract,” for the reason “that the former husband or wife of one of the parties was living, and that the marriage with such former husband or wife was then in force.” A subsequent section (22) of the same article declares that “when a marriage is sought to be annulled on the ground that the former husband or wife of one of the parties was living, it maybe declared void on the application of either of the parties during the lifetime of the other, or upon the application of such former husband or wife. ”
The court, in pursuance of the provisions above recited, is not authorized to dissolve the last marriage, and does not undertake to do so, but simply to declare it to be illegal and void ; it pronounces it null, for the law does not contemplate the possibility of one being the lawful husband or wife of two persons at the same time.
In this case, the marriage between Hugh Miller and the plaintiff has never been dissolved, and she, being *123 his wife, was incapable ‘of contracting a valid marriage with John Spicer.
Such "a marriage being invalid, it can have no legal effect beyond what the statute gives it. What, then is meant by the provision that it shall not be void, or according to the section first cited, “absolutely void,” until a “sentence of nullity” is pronounced against it %
A further reference to the statute will show. The next section (§ 23, same article) provides that “ when it shall appear and be so declared that such subsequent marriage was contracted in good faith and with full belief of the parties that the former husband or wife was dead, the issue of such marriage born or begotten before its nullity shall be declared, shall be entitled to succeed in the same manner as legitimate children, to the real and personal estate of the parent, who, at the time of the marriage was competent to contract, and the issue so entitled shall be specified in the sentence of nullity.
A very high authority has spoken of this as legitimatizing the children. 'That is not quite accurate. If they were rendered legitimate, they could inherit from both parents, but they are only permitíed to take in the same manner as legitimate children, from the parent only who was competent to contract, be it father or mother. Here is a special provision in favor of the children, and that a limited one. The care manifested in making the provision, the nature of the limitation, and the absence of any other provision as to property, shows almost conclusively to my mind that the legislature did not intend to confer any rights of property as arising from the marriage, upon the party who was not “ competent to contract” it.
The legislature, by a further enactment shows what effect it meant to give to such marriage, in favor of the party who,' although incapable of contracting a valid marriage, might "in good faith undertake to do so.
By section 9, article 2, title 5, ch. 1, of part 4, Re?). *124 Slat., persons contracting a subsequent marriage, under the circumstances claimed in favor of the plaintiff, are exempted from the penal consequences of bigamy. The marriage is none the less illegal.
The law confers upon the issue a certain limited capacity to succeed to property ; and to the party who would otherwise be liable, it extends immunity from punishment. It affords to such party a shield but not a sword. It follows, I think, that as the plaintiff was never the lawful wife of John Spicer, she was never dowable of his lands. The text books say, in regard to the requisites of dower, “ the marriage must be a legal one, though, if voidable only and not void, the wife will be entitled to dower, if it be not dissolved during the lifetime of the husband” (See 1 Washburn on Heal Property, 108, 3 ed). As instances of marriages voidable only, they give the case of parties contracting marriage at an earlier age than that justified by the law of the country or state, and of the intermarriage of an aunt and nephew in England, where such a marriage was voidable, but not. void. 1 apprehend the marriage under consideration was not “ voidable only” in any such sense. Such a marriage is absolutely void ab. initio at common law. 1 Scribner on Dower, 100, says, “a second marriage, while a former husband or wife is living, is ipso facto void without any divorce, as well by the spiritual as the common law. In the United States, this rule has been applied in several cases, involving the right of dower.” In whatever respects our statutes may have changed this rule, I have endeavored to show that it confers no right of property through a marriage, one of the parties to which is under the disability of a prior marriage undetermined, except such as have been specified. Even if no sentence of nullity ever be pronounced, yet the issue of such a marriage can not inherit from the father, for it is only “ when it shall appear, and be so decreed, that such *125 subsequent marriage was contracted in good faith,” &c., that the statute gives the right to succeed to the property of the parent who was “competent to contract.”
When the court declares the marriage void the children are provided for by decree, and “ the issue so entitled shall be specified in the sentence of nullity.”
If the plaintiff’s claim is valid, we should be led to the conclusion that incase of a marriage, which is liable to be declared void, because the woman was already the wife of another man, if no one invokes the judgment of the court before the man dies, the widow (so called), may claim her dower on the ground that she was legally his wife, while her own children by him, would be excluded on the ground of illegitimacy, from any inheritance in the very same property out of which she is thus endowed. It seems to me, the statute has not provided for such an astonishing result.
This is to me a new question. I find no case in which it has arisen, at least directly, nor do the researches of the counsel seem to have been more successful.
The author of the work on dower, above cited, seems to think that under our statute, such a marriage as we have, been considering, is valid, as a prerequisite of dower, until annulled (yol. 1, pp. Ill, 112, 124).
With great respect, I find myself unable to come to the same conclusion.
I am inclined to think, however, that upon the plaintiff’s version of the transaction, which must be taken to have been sustained by the jury, the defendant, is estopped from denying the plaintiff’s right to recover what would have been the amount of her dower in the premises in question, if John Spicer had died seized of such premises, leaving her his lawful widow. Not, as claimed by plaintiff’s counsel, because he accepted a deed in which she was described as the wife of John Spicer, for “there is no general or inflexible principle which estops the grantee from showing that the gran *126 tor has no title, or none which is capable of being passed by the grant. The mere acceptance of a conveyance does not prevent him from showing want of estate in the grantor of the land conveyed ” (Herman on Estoppel, 301). This position seems to be maintained by the authorities in this State.
But according to the plaintiff’s statement, John Spicer was about to make a testamentary disposition of this very property in her favor. She was capable of taking it as his devisee. At this time the defendant interfered and procured the conveyance of the premises to himself upon the promise that he would pay her an amount equal to Tier dower upon the death of John. This, perhaps, might fairly be said to mean that he would pay her such an amount as she, if entitled to dower in the lands might claim, but I prefer to rest my conclusions on the ground, that having diverted the property from its course to her by will, by force of his promise, he is estopped from denying the validity of that promise while continuing to hold and enjoy its fruits.
I think, therefore, she may maintain this action upon a promise given, and accepted, and acted upon, as she swears this was, though she would not, as the widow of John Spicer, have been entitled to admeasurement of dower.
We come then to inquire whether there is sufficient evidence to sustain the finding of the jury as to the amount of the plaintiff’s recovery. The court directed the jury to proceed on thebasis of the value of the property at the time of the alienation, namely, 1863. It was conceded by the plaintiff that John Spicer owned in his own right only one undivided half of the premises, holding the other half in trust for George. What was the value of the half belonging to John ?
The jury evidently assumed it. to be twenty-nine thousand dollars, as upon that basis the precise result shown by the veidict, is attained.
*127 But so far as I can see, there is not sufficient evidence to support such assumption. It is true, the aggregate amount of the consideration named in the three deeds is twenty-nine thousand dollars, but I find nothing in the case to show that that sum was in fact the value, or was agreed upon or regarded by the parties as the value of the property, above the incumbrances ; certainly not as the value of one-half.
The consideration clauses in the deeds to defendant seem to have been taken from the corresponding deeds to John; for instance, we find that the premises on the north side of Fifty-second-street were conveyed by John M. Bruce and wife to John Spicer, for an expressed consideration of nine thousand dollars, only a year before the conveyance to defendant, and the consideration named in the deed of the same premises to defendant, is also nine thousand dollars, although John Spicer, and plaintiff, as his wife, gave back mortgages on the same premises to Bruce, for nine thousand dollars in the aggregate, which mortgages were afterwards (in 1864) assigned to defendant. Surely, in the absence of any testimony as to value in 1863, or of any agreement of parties, the copying the consideration from one deed into another, without regard to intermediate incumbrances, or the distinction between a half and a whole interest, can afford no solid ground on which to base a verdict.
Since the argument, plaintiff’s counsel has submitted an additional point on this subject, claiming aid from certain admissions in the answer.
But I see nothing there to help us out of this difficulty. The answer, as I construe it, merely admits that the complaint correctly set out the contents of the deeds in certain respects, not that the consideration expressed in the deeds was the actual consideration of the conveyance 5 and there is no admission of any specific advance in value so as to dispense with proof on that point.
*128 If I am correct in the conclusion at which I have arrived, the judgment should be reversed, and a new trial granted. It is unnecessary to examine any of the other questions presented on the argument, though several of them would otherwise deserve a serious and careful consideration.
Judgment reversed, and a new trial granted. Costs to abide the event.
Heilson, J., concurred.